## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **TARIA BUTLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 03-CV-0558-CVE-PJC** |
| | ) | |
| **CITY OF TULSA; BILL LAFORTUNE,** | ) | |
| **Mayor; DAVE BEEN, Chief of Police; and** | ) | |
| **OFFICER JAMES STUMP,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### OPINION AND ORDER

This is a 42 U.S.C. § 1983 civil rights action commenced by Plaintiff, a state prisoner appearing *pro se*. Before the Court are the motions to dismiss/summary judgment filed by Defendants City of Tulsa, Mayor Bill LaFortune and Officer James Stump (Dkt. ## 21, 26). Defendants submitted a Special Report (Dkt. # 22) as directed by the Court. Plaintiff filed a response to Defendants' motions (Dkt. # 34) and his own "Special Report" (Dkt. # 33) to "support his reply and response to the defendants." He also filed a "Sworn Statement of Facts" (Dkt. # 32). For the reasons discussed below, the Court finds Defendants' motions for summary judgment shall be granted.

### BACKGROUND

The undisputed facts reveal that on August 13, 2001, at 3:25 a.m., Defendant James Stump, a City of Tulsa police officer, was dispatched to Plaintiff's residence in response to a 911 domestic violence call placed by Plaintiff's wife, Angela Butler. The front door of the residence was open as Officer Stump approached. Plaintiff was in the doorway holding a large knife and arguing with his wife. Officer Stump drew his weapon and ordered Plaintiff to drop the knife. At this point, the parties' accounts of the events diverge. Officer Stump claims that instead of dropping the knife as

ordered, Plaintiff lunged at him.  In contrast, Plaintiff claims that he eventually dropped the knife, did not lunge at Officer Stump, but did try to escape the scene by running toward the officer. <u>See</u> Dkt. # 32.  It is undisputed that Officer Stump fired one shot at Plaintiff, striking him in the upper arm.  Plaintiff ran off but was found nearby and taken into custody.  After being treated at the scene, Plaintiff was transported to the hospital.  He was ultimately charged and convicted by a jury of Assault with a Deadly Weapon and Assault and Battery-Domestic, in Tulsa County District Court, Case No. CF-2001-4618.

On August 18, 2003, the Clerk of Court received Plaintiff's original civil rights complaint (Dkt. # 1) for filing.  Plaintiff filed his first amended complaint on August 13, 2004 (Dkt. # 12). Because Plaintiff's first amended complaint identified certain parties which are not cognizable entities, the Court ordered Plaintiff to file a second amended complaint to name proper party defendants.  <u>See</u> Dkt. # 11.  Plaintiff's second amended complaint (Dkt. # 13) was filed on September 14, 2004.  Defendant Dave Been has since been dismissed without prejudice from the lawsuit. <u>See</u> Dkt. # 45.  Plaintiff claims his civil rights were violated in the August 13, 2001, incident in which he was shot by Defendant Stump.  He seeks "compensatory, exemplary, mental anguish, monetaty (sic), nominal and punitive damages" in the amount of $5,000,000.00, from the remaining Defendants City of Tulsa, Bill LaFortune and James Stump.  <u>See</u> Dkt. # 13.

### *ANALYSIS*

**A.     Statute of limitations issue**

The defendants argue that Plaintiff's suit must be dismissed because it was filed after expiration of the two (2) year statute of limitations.  <u>See</u> Dkt. ## 21, 26. Unable to determine whether Plaintiff delivered his complaint to prison officials for mailing within the statutory

limitations period, see Houston v. Lack, 487 U.S. 266 (1988) (holding that a *pro se* prisoner's pleading is "filed" at the moment of delivery to prison authorities for forwarding to the district court), this Court ordered defendants to provide a copy of the appropriate prison mail logs demonstrating the date prison officials received Plaintiff's complaint. See Dkt. # 45.  In compliance with the Court's order, the defendants contacted prison officials and obtained copies of the appropriate prison mail logs (Dkt. # 46).  Based upon the information provided, the Court finds that Plaintiff's complaint was timely filed. Accordingly, defendants' motions to dismiss upon grounds that Plaintiff did not file his complaint within the statutory limitations period shall be denied.

**B.      Summary Judgment Standard**

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When reviewing a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). "However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  Id. The Court cannot resolve material factual disputes at summary judgment based on conflicting affidavits.  Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991).  The mere existence of an alleged factual dispute, however, does not defeat an otherwise properly supported motion for summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48  (1986).  Only material factual disputes preclude summary judgment; immaterial disputes are irrelevant. Hall, 935 F.2d at 1111. Similarly, affidavits

3

must be based on personal knowledge and set forth facts that would be admissible in evidence. Id. Conclusory or self-serving affidavits are not sufficient. Id. If the evidence, viewed in the light most favorable to the nonmovant, fails to show that there exists a genuine issue of material fact, the moving party is entitled to judgment as a matter of law. See Anderson, 477 U.S. at 250.

Where a *pro se* plaintiff is a prisoner, a court authorized "Martinez Report" (Special Report) prepared by prison officials may be necessary to aid the Court in determining possible legal bases for relief for unartfully drawn complaints. See Hall, 935 F.2d at 1109. The Court may treat the Martinez Report as an affidavit in support of a motion for summary judgment, but may not accept the factual findings of the report if the Plaintiff has presented conflicting evidence. Id. at 1111. The Plaintiff's complaint may also be treated as an affidavit if it is sworn under penalty of perjury and states facts based on personal knowledge. Id. The Court must also construe Plaintiff's *pro se* pleadings liberally for purposes of summary judgment. Haines v. Kerner, 404 U.S. 519, 520 (1972). When reviewing a motion for summary judgment it is not the judge's function to weigh the evidence and determine the truth of the matter but only to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

In considering Defendants' motions for summary judgment, the Court has examined the Special Report, filed on December 29, 2004. (Dkt. #22). Plaintiff has not presented evidence to refute the material facts in Defendants' motions and Special Report. He does, however, interpret the facts differently to argue that his claims are valid, and has his sworn statement of facts (Dkt. # 32) and his own "Special Report" (Dkt. # 33) to support his arguments. The Court has considered all these materials insofar as they are related to the constitutional issues raised by Plaintiff.

**C.      Defendant Officer Stump**

4

Defendant Stump contends that the doctrine of qualified immunity entitles him to summary judgment (Dkt. # 26). "Qualified immunity shields public officials from section 1983 liability if their actions did not 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Axson-Flynn v. Johnson, 356 F.3d 1277, 1299 (10th Cir. 2004) (quoting Pino v. Higgs, 75 F.3d 1461, 1467 (10th Cir. 1996)). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The purposes underlying the doctrine of qualified immunity require the court to analyze summary judgment motions invoking this doctrine differently from other summary judgment motions. Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). "Qualified immunity requires a court to ask (1) whether taken in the light most favorable to the plaintiff the facts alleged show the officer's conduct violated a constitutional right, and if so, (2) whether the right was clearly established." Blossom v. Yarbrough, 429 F.3d 963, 967 (10th Cir. 2005) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

"Order is important; we must decide first whether the plaintiff has alleged a constitutional violation, and only then do we proceed to determine whether the law was clearly established." Saucier, 533 U.S. at 200. "In rebutting a qualified immunity claim at the summary judgment level, a plaintiff can no longer rest on the pleadings and the court looks to the evidence before it (in the light most favorable to the plaintiff)." Axson-Flynn, 356 F.3d at 1299 (internal citation and quotation marks omitted). "Once the plaintiff makes this showing, the defendant bears the usual burden of a party moving for summary judgment to show that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." Id. at 1299-1300. "More specifically, the defendant must show that there are no material factual disputes as to whether his

or her actions were objectively reasonable in light of the law and the information he or she possessed at the time." Id. at 1300. "At all times during this analysis, we evaluate the evidence in the light most favorable to the nonmoving party." Id.

Defendant Stump's use of force against Plaintiff is analyzed under the Fourth Amendment which guarantees citizens the right to be free from unreasonable searches and seizures. Id. (citing Terry v. Ohio, 392 U.S. 1, 8 (1968); Graham v. Connor, 490 U.S. 368, 388 (1989)). The Fourth Amendment standard governing excessive force claims is well settled. "[L]aw enforcement officers must be 'objectively reasonable' in their searches and seizures." Dixon v. Richer, 922 F.2d 1456, 1461 (10th Cir. 1991).  According to the Supreme Court,

> Determining whether force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake . . . . Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight . . . . The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

Graham, 490 U.S. at 396 (alterations, citations, and quotations omitted).  Courts have emphasized that the reasonableness of a police officer's actions is assessed from the perspective of a reasonable officer on the scene, "rather than with the 20/20 vision of hindsight." Blossom, 429 F.3d at 967 (quoting Graham, 490 U.S. at 386-97).

Applying the Graham standard to the facts at hand the Court finds that Officer Stump's actions were objectively reasonable in light of the facts and circumstances confronting him.  Plaintiff admits that Officer Stump was responding to a 911 domestic violence call from his wife (Dkt. # 32).

6

The call was made at 3:25 a.m. and originated from an apartment at 12715 East 40th Street.  Plaintiff

also acknowledges that he was intoxicated and had a knife in his hand when Officer Stump arrived.

Id.  Plaintiff does not dispute Officer Stump's contention that Plaintiff did not immediately obey the

police officer's order to drop the knife.  He concedes that he did not drop it until after the third time

the officer ordered him to do so.[1]  Id.  He admits trying to flee by running toward the officer because

he "could only escape by going in the officer's direction."  Id.  After being apprehended in a nearby

parking lot, Plaintiff was taken to a hospital. He was charged and convicted by a jury of assault and

battery with a dangerous weapon and battery-domestic.

Accepting the facts in the light most favorable to Plaintiff, the Court finds that even if

Plaintiff had dropped the knife before being shot, it is clear that Officer Stump could reasonably

believe that Plaintiff was a threat to the safety of Plaintiff's wife and to the police officer.  Plaintiff

and Defendant Stump were in close proximity to each other in a dark area.  Plaintiff was wielding

a knife with an eight (8) inch blade, see Dkt. # 22 at 41, which he did not drop upon either the first

or second demand by Officer Stump. He tried to avoid arrest and "escape" by running toward Officer

Stump. See Dkt. # 32.  Deadly force is "justified under the Fourth Amendment if a reasonable officer

in Defendants' position would have had probable cause to believe that there was a threat of serious

physical harm to themselves or to others." Jiron v. City of Lakewood, 392 F.3d 410, 415 (10th Cir.

2004) (citing Sevier v. City of Lawrence, 60 F.3d 695, 699 (10th Cir. 1995)); see also Graham v.

Connor, 490 U.S. 386, 396 (1989).  Plaintiff placed Officer Stump in fear of "imminent serious

---

[1]  In Plaintiff's sworn statement filed herein he states, "After I turned around, he told me to
'drop the knife.' The knife was in my left hand. Being that I had been drinking that night, my
reactions was (sic) slow. While he told me to drop the knife again, I was rationalizing in my head,
thinking "Darn, I got this stuppied (sic) knife and the officer might see this situation different then
what it is!' After he told me to drop the knife the third time, I dropped it as if it was hot, right in front
of the small bush." See Dkt. # 32 at ¶ 3.

bodily injury" with a deadly weapon. It is not constitutionally unreasonable for an officer to shoot a suspect advancing toward him while armed with a knife. See, e.g., Jiron, 392 F.3d at 415; Romero v. Bd. of County Comm'rs, 60 F.3d 702, 703-04 (10th Cir. 1995) (intoxicated suspect shot by police officer after refusing instructions and approaching officer with knife). Plaintiff has failed to demonstrate that Officer Stump's conduct was objectively unreasonable under the circumstances and, therefore, in violation of Plaintiff's Fourth Amendment rights. Because Plaintiff has not shown that the alleged conduct violated his rights under the Fourth Amendment, he has not satisfied the first prong of the qualified immunity analysis.  See Axson-Flynn, 356 F.3d at 1300.  Accordingly, Defendant Stump is entitled to qualified immunity and, for that reason, his motion for summary judgment shall be granted.

**D.    Defendant City of Tulsa**

On December 29, 2004, Defendant City of Tulsa filed its motion to dismiss/summary judgment on the grounds that Plaintiff cannot prove facts demonstrating a direct causal link between the alleged conduct of Defendant Officer Stump and any action by the City (Dkt. # 21).  In Plaintiff's second amended complaint he relies upon the doctrine of *respondeat superior* to support his argument that the City of Tulsa violated his constitutional rights.  He claims the City "is liable for damages suffered by plaintiff by the officer's untrained and unprofessional conduct" because the "officer works for the City of Tulsa." (Dkt. # 13).  In his response to the City of Tulsa's motion Plaintiff expands upon his assertion that the City is liable because Officer Stump's actions were unconstitutional and he was not adequately trained (Dkt. # 34 at 5).  Plaintiff connects all his assertions against the City of Tulsa to his claim that Officer Stump violated his Fourth Amendment rights. As discussed above, this Court has determined that Defendant Stump did not violate

Plaintiff's rights. Accordingly, Defendant City of Tulsa has not violated Plaintiff's constitutional rights for any alleged wrongdoing related to Officer Stump's action.  As a result, the City of Tulsa is entitled to summary judgment.

**E.      Defendant Mayor LaFortune**

Defendant Mayor Bill LaFortune filed his motion to dismiss/summary judgment on December 29, 2004, on the grounds that the Plaintiff failed to allege that Mayor LaFortune personally participated in any of the acts he claims violated his rights (Dkt. # 26 at 3). Plaintiff responds that, "Mayor Bill LaFortune is over the City of Tulsa. Being that the City of Tulsa, by it's (sic) official Officer James Stump shooting plaintiff in cold blood, acting under color of state law, while on duty, the City of Tulsa is liable for damages the plaintiff has sustained." See Dkt. # 34 at 4. Plaintiff makes no other specific allegations relating to Defendant LaFortune. He links the alleged liability of the mayor to the sole fact that he is "over the City of Tulsa." Having previously found that Defendant Stump did not violate Plaintiff's constitutional rights and the City of Tulsa has no liability in this action, the Court also finds that Defendant LaFortune is entitled to judgment as a matter of law and his motion for summary judgment shall be granted.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.      Defendants' motions to dismiss (Dkt. ## 21, 26) based upon expiration of the statute of

limitations are **denied**.

2.      The motion for summary judgment (Dkt. # 21) filed by Defendants City of Tulsa and Officer

Stump is **granted**.

3.      Defendant Lafortune's motion for summary judgment (Dkt. # 26) is **granted**.

4.      A separate Judgment shall be filed in this matter.


**IT IS SO ORDERED** this 23rd day of February, 2006.


_____

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT